# A. L. WEBSTER *vs.* JOHN HARPER.

In an action by a deputy sheriff upon a receipt given him by the defendant for goods attached by virtue of mesne process, it is a good defence that another officer, who had previously attached the goods, and to whom the defendant has delivered them, had a better title to them than the plaintiff.

And in such a case the plaintiff cannot maintain the action by showing that the suit in which the first attachment was made, was fraudulent, unless he can also show that the defendant was a party to the fraud.

ASSUMPSIT on a written contract, made by the defendant on the 16th October, 1830, to deliver to the plaintiff, a deputy sheriff, certain goods which the plaintiff had that day attached

by virtue of a writ in favor of Ward and Quincy against Abraham Harper.

The cause was tried upon the general issue, at November term, 1833.

It appeared that the defendant made the contract stated in the declaration ; that Ward and Quincy recovered judgment against Abraham Harper, at November term, 1830, for $77.75 debt, and $7.52 costs ; that execution issued on the judgment on the 15th November, 1830, and was delivered to the plaintiff, who within thirty days after judgment demanded the goods of the defendant, who refused to deliver them.

It further appeared, that on the 4th October, 1830, one Joseph Ela, a deputy sheriff, by virtue of a writ in favor of Hazen Harper against Abraham Harper, attached the said goods ; and that Hiram Harper gave Ela a written contract to deliver him the goods on demand ; that at October term, 1830, in the county of Strafford, judgment was rendered in favor of Hiram Harper against the said Abraham ; execution issued on the judgment tested October 26th, 1830, and on the 29th day of the same October, the goods were sold by virtue of the same execution. The officer who sold the goods stated in his return that he levied the execution upon the goods on the 25th October, 1830.

On the 29th January, 1829, Abraham Harper, who is the father of Hazen and Hiram, conveyed to Hiram his homestead farm. But the father and the two sons, who were unmarried, continued to reside upon the farm together until after the year 1830.

The said goods when attached by Ela were upon the said farm, and after that attachment remained there as before, until sold as above stated.

Hiram Harper caused the said suit in favor of Hazen to be commenced, directed the attachment to be made, and gave this defendant a written contract to indemnify him for becoming responsible to this plaintiff.

There was evidence in the case that the defendant had

notice when he made the contract that the attachment by Ela would be questioned by Ward and Quincy, on the ground that the first suit was fraudulent.

Ward having released to Quincy all the interest he had in the judgment they recovered against Abraham Harper, and being released by the plaintiff from all claims on account of the said receipt, was admitted as a witness for the plaintiff.

The court instructed the jury, that if the first suit was fraudulent, and the defendant had notice that the first attachment would be contested by Ward and Quincy, on that ground ; and the defendant had an indemnity from Hiram for becoming responsible to the plaintiff, then the second attachment was valid and the defendant liable.

The court further instructed the jury, that the sale by Ela of the property in question, on the execution in favor of Hazen Harper, on the 29th October, 1830, the execution bearing teste on the 26th day of the same month, was premature, and could have no effect on any legal attachment made by another creditor previous to such sale.

The jury returned a verdict in favor of the plaintiff, and the defendant moved the court to grant a new trial on the above case.

*Quincy*, and *Bell*, for the plaintiff.

*Rogers*, and *Bartlett*, for the defendant.

RICHARDSON, C. J., delivered the opinion of the court.

If in this case the first attachment was valid, the second attachment was void. From the very nature of the thing there cannot be two valid attachments of the same goods by different officers at the same time. 2 *N. H. R.* 66 ; 5 *N. H. R.* 527, *Dunklee* vs. *Fales.*

If the second attachment was void, and the first valid, it is very clear, as the goods have gone into the hands of the

officer who made the first attachment, this action cannot be maintained. It is settled that it is a good defence in an action upon a receipt like this, that the plaintiff has no claim to the goods, and that they have gone into the possession of the owner. There are cases, in which the officer may recover of the receipter, although the attachment may have been dissolved. But it is only in cases where the goods remain in the hands of the receipter. In such cases the officer may maintain the action, because he is responsible for the goods to the debtor, to whom he is bound to restore them. If the debtor, or those rightfully claiming under him, have the goods already in possession, the officer whose attachment has failed, has no claim to recover any thing of the receipter. In such a case his title has failed entirely.

The plaintiff in this case contested the validity of the first attachment, on the ground that it was fraudulent with respect to other creditors; and the judge who tried the cause instructed the jury, that if that attachment was fraudulent and the defendant, having an indemnity, was notified that it would be contested on that ground, then the plaintiff was entitled to a verdict.

The question is, whether this instruction was right?

The rules of law by which this question is to be determined are very clear. If the first suit was wholly groundless and brought merely with a view to defraud the creditors of Abraham Harper, and this defendant was a party to the fraud, then it is very clear that he ought not to be permitted to set up his own fraudulent act as an answer to this suit. The first attachment, so far as regarded him, was void, and gave him no title to hold the goods against any creditor of Abraham Harper who might subsequently attach them.

But however fraudulent the first suit may have been, unless the defendant was party to the fraud, the attachment in that suit must be deemed valid with respect to him. In general, the validity of the attachment does not depend upon the merits of the suit in which it is made, nor are those

merits to be tried in a suit between third persons and the sheriff who makes the attachment, or his bailee. If the creditors in this case who made the second attachment supposed the first suit to be fraudulent, they should have become parties to that suit, and in the name of Abraham Harper have contested the validity of the claim. It is a very usual and common practice of courts to permit those who have made attachments, to become parties to suits in which previous attachments have been made, for that purpose. 4 *N. H. R.* 319, *Bucknam* vs. *Bucknam.*

In general, this is the only mode in which a fraudulent attachment can be defeated. But in this case, if the first suit was altogether groundless, and brought merely with a view to defraud creditors, and the defendant was a party to the fraud, then this case forms an exception to the general rule.

The defendant had an indemnity. But that is wholly immaterial. However fraudulent the first suit may have been, if he was no party to the fraud, the attachment must be deemed valid as regards him, although he may have an indemnity. Indeed it is manifest that the validity of the first attachment cannot depend at all upon that circumstance. It is no concern of this defendant whether the first suit were fraudulent or not, provided he was no party to the fraud.

Nor is the circumstance, that the defendant had notice that Ward and Quincy intended to contest the validity of the first attachment, at all material. He had a right to suppose they intended to contest it in the usual way, by appearing in the suit. If the first suit was fraudulent, and he a party to the fraud, he is liable in this case, whether he had such notice or not. If he was not a party to the fraud, such notice cannot make him liable in this suit.

We are, therefore, of opinion, that the jury were misdirected; and the verdict must be set aside and the cause submitted to another jury, with directions that if the first suit was fraudulent and the defendant a party to the fraud,

then the plaintiff is entitled to recover : but otherwise not, unless the first attachment can be shown to have been in some way dissolved when the second attachment was made.

*New trial granted.*

---

## OPINION.

*An Opinion of the Justices of the Superior Court of Judicature upon the constitutionality of a bill providing for the recording of deeds in the offices of town clerks, communicated to the Senate, June session, 1835, agreeably to a resolve of the previous year.*

---

THE undersigned, justices of the superior court of judicature, having, at the request of a committee of the honorable senate, attentively examined the bill which is hereunto annexed, in order to form an opinion whether any of the provisions of said bill are repugnant to the constitution, beg leave to submit the following as their opinion upon the subject.

The only clause in the constitution which seems to have any bearing whatever upon the question we are to consider, is the clause relating to the choice of registers of deeds. And as the history of that clause may tend to throw some light upon its nature and purpose, we have endeavored to trace it up to its first introduction, as a constitutional provision in this state.

The first constitution of this state was formed and adopted by a congress of the colony, on the 5th January, 1776. That constitution contained the following provisions. " That civil officers for the colony and for each county, be appointed, and the time of their continuance in office be determined by the two houses—except clerks and county treasurers, and recorders of deeds."